JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Nicholas Schmidt ("defendant"), appeals from his conviction and sentence for sexual battery. For the reasons that follow, we reverse and vacate defendant's conviction and sentence, as well as his designation as a sexually oriented offender.
 {¶ 2} In May 2005, defendant traveled from New York to Cleveland with two other friends, Jeff and Brian, to celebrate another friend's graduation from law school. On May 21, 2005, around 11:30 p.m., the group went to a bar located on West 6th Street.
 {¶ 3} Also, on May 21, 2005, the victim ("JG"), a 20-year-old college student made plans to go out with her friend ("G"). JG went to G's house and consumed some vodka and orange juice. The women then went downtown sometime around 11:00 p.m. and arrived at the same bar on West 6th Street.
 {¶ 4} JG consumed about five or six drinks, including mixed drinks of Jagermeister/Red Bull and cranberry/vodka. Defendant and his friends also drank alcohol at the bar. No one recalled any alcohol consumption beyond this.
 {¶ 5} By all accounts, JG socialized mostly with defendant while at the bar. JG gave defendant her phone number with the intent of reuniting should defendant return to Cleveland at some other time. Around 2:15 a.m., the group left the bar. JG testified that she was "pretty drunk" along with everyone else. *Page 4 
 {¶ 6} JG testified that she was walking normally and was not slurring her words. JG offered the three males a ride back to their hotel on Public Square, and they accepted. JG further testified as follows:
 {¶ 7} "Q: "Now you were able to drive from there [the parking lot on West 6th Street] to the hotel, is that correct?
 {¶ 8} "A: Yes, that is correct.
 {¶ 9} "Q: When you drove to the hotel, did you just pull over to open the door to let them out?
 {¶ 10} "A: We just parked the car right in one of the spots. * * *
 {¶ 11} "Q: Now when you parked on the street, were there other cars on the street?
 {¶ 12} "A: I honestly do not remember. I'm sorry.
 {¶ 13} "Q: You parked on Superior?
 {¶ 14} "A: Yes, that is correct.
 {¶ 15} "Q: And opposite the hotel?
 {¶ 16} "A: Yes.
 {¶ 17} "Q: And it was a parking area?
 {¶ 18} "A: Just on the street where there is parking meters. It wasn't a parking lot.
 {¶ 19} "Q: There were parking meters there? *Page 5 
 {¶ 20} "A: Yes.
 {¶ 21} "Q: So you parallel parked?
 {¶ 22} "A: Yes.
 {¶ 23} "Q: You were able to parallel park your Honda?
 {¶ 24} "A: I was able to park it, yes." (Tr. at 102-103).
 {¶ 25} After JG parallel parked her car, they all went inside.
 {¶ 26} The witnesses consistently testified that Jeff and G purchased a separate hotel room, while Brian, defendant, and JG went to the other room. Brian decided to sleep in the bathroom because he believed JG and defendant needed their privacy.
 {¶ 27} JG consistently admitted that she consented to much of the sexual activity that occurred between her and defendant that evening. Both JG and defendant testified that they took off their clothes. JG later gave a detailed statement of the encounter to medical personnel. Therein, she recalled everyone's name, and specific details of the evening throughout her relations with defendant and after. According to JG, she and defendant were "making out" on the bed, disrobing. Defendant left to get some water and when he returned the sexual activity resumed. Defendant tried to engage in vaginal intercourse with her but stopped when she said no. Nonetheless, the two continued to engage in other sexual activities. She then allowed him to kiss "there," meaning her genitals. She stated she "tried to move away" but did not stop defendant. JG consented to defendant *Page 6 
penetrating her vagina with his fingers. She described being moved around "to different positions." She also admitted that she asked defendant if he had a condom, and he said no. Nonetheless, the two continued to engage in other sexual activities. She then allowed him to kiss "there," meaning her genitals. She stated she "tried to move away" but did not stop defendant. JG consented to defendant penetrating her vagina with his fingers. She described being moved around "to different positions." She also admitted that she asked defendant if he had a condom, and he said no.
 {¶ 28} JG consistently maintained at trial and before trial that she did not want to have vaginal intercourse with defendant. She claimed that she verbally and physically rebuffed defendant's advances toward vaginal intercourse. JG recalls coming in and out of consciousness and at one point awoke to defendant with his penis inside of her without her consent. She gathered her things and left the room to locate her friend.
 {¶ 29} Defendant recalled trying to help JG find her friend.
 {¶ 30} JG described tracking down her friend. First, she obtained the hotel bill from under the door and called the front desk. Despite the hotel's refusal to disclose the room number, JG was able to find it by calling her friend's cell phone and walking from room to room until she heard the phone ringing. She then "barged in" and told her friend they needed to leave. Again, JG drove. The girls stopped at a *Page 7 
McDonalds to eat because JG felt sick. When asked if she "ever [said] to G the word `rape' in person?," JG responded, "I really don't remember. I told her the situation and how I was upset, and I just remember her telling me things like that I had to do, what I felt was right and that's how I felt not necessarily supporting me or not necessarily saying that she was against me." G testified that JG "was a bit upset" and "was like very tense and nerved up."
 {¶ 31} JG began to believe she had been raped because she did not feel she was in control of herself when defendant inserted his penis in her vagina. When JG arrived home, she decided not to shower in order to preserve evidence. Then, she began contacting several friends. Hours after returning home, JG went to Hillcrest Hospital and reported being raped by defendant.
 {¶ 32} Defendant testified that JG did consent and that she never told him no to vaginal intercourse. It was his impression that JG was "enthusiastic" about the sexual activities, and he did not feel she was overly intoxicated. Defendant stated "she seemed to enjoy it. All the signals I received from her were positive."
 {¶ 33} Likewise, defendant's friend, who was in the bathroom, heard the two and believed they were engaged in consensual sexual activity.
 {¶ 34} Defendant and his friends returned to New York that day. Defendant was unaware of JG's accusations until months later. Defendant cooperated with Buffalo police concerning his encounter with JG in May 2005. Brian and Jeff cooperated with the police inquiry. *Page 8 
 {¶ 35} Defendant was indicted on one count of rape in violation of R.C. 2907.02(A)(1)(c). The trial court found defendant not guilty of rape but guilty of sexual battery in violation of 2907.03(A)(2), the lesser included offense under the indictment. Defendant's appeal followed and raises five assignments of error. Our disposition of Assignments of Error II and III render the remaining assignments of error moot.
 {¶ 36} "II. The appellant's conviction under R.C. 2907.03(A)(2) is not supported by sufficient evidence.
 {¶ 37} "III. The appellant's conviction under R.C. 2907.03(A)(3) is not supported by sufficient evidence."
 {¶ 38} The sentencing journal entry and subsequent entries reflect that the trial court found "defendant guilty of sexual battery/2907.03A(2) F3 the lesser included offense under the indictment." Accordingly, Assignment of Error III is overruled as moot.
 {¶ 39} R.C. 2907.03(A)(2) provides:
 {¶ 40} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 41} "* * *
 {¶ 42} "(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." *Page 9 
 {¶ 43} Defendant disputes that JG was "substantially impaired" or that defendant knew she was. Assuming, without deciding, that there was sufficient evidence of substantial impairment for purposes of R.C.2907.03(A)(2), the evidence is lacking as a matter of law on the element of defendant's knowledge of such impairment.
 {¶ 44} R.C. 2901.22(B) defines "knowledge" as:
 {¶ 45} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 46} There is nothing in this record that would enable a trier of fact to reasonably conclude that defendant was aware that JG was substantially impaired to the point that it affected her ability to control his or her conduct. While JG may very well have intended to stop short of engaging in vaginal intercourse with defendant and subjectively felt substantially impaired during her sexual activities, we cannot conclude that defendant knew of JG's condition beyond a reasonable doubt. While she testified that she said "no," she also testified that she repeatedly continued to engage in very intimate consensual sexual activity with defendant. She said nothing to defendant following the incident. And, the other person, who was present in the bathroom during the entire incident, did not hear any conflict between defendant and JG. The outward signs JG exhibited indicated that she was aware of her *Page 10 
surroundings, was able to operate her vehicle, park it by the hotel, and walk and talk in a "normal" fashion. While JG claims she might have been in and out of consciousness, there is no evidence that defendant noticed this. Further, JG had specific recall of all the events of that night, with the sole exception of the very moment defendant engaged in vaginal intercourse. Moments after the encounter with defendant, she described being able to employ a relatively elaborate plan to find her friend's whereabouts in the hotel. Then, she got back in her car and drove home without difficulty.
 {¶ 47} For these reasons, the trial court erred when it denied defendant's motion for acquittal. Accordingly, Assignment of Error II is sustained.
 {¶ 48} "I. The trial court erred in permitting and considering evidence of a prior misdemeanor arrest and conviction to be used as impeachment evidence.
 {¶ 49} "IV. The appellant's conviction is against the manifest weight of the evidence.
 {¶ 50} "V. The trial court erred in finding Mr. Schmidt guilty of sexual battery where sexual battery is not a lesser included offense of rape."
 {¶ 51} Given our disposition of Assignments of Error II and III, we do not find it necessary to address Assignments of Error I, IV, and V, which are moot. App.R. 12(A)(1)(c).
Judgment reversed; sexually oriented offender classification vacated.
It is ordered that appellant recover from appellee his costs herein taxed. *Page 11 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 COLLEEN CONWAY COONEY, J., and MARY J. BOYLE, J., CONCUR *Page 1