[Cite as *State v. Freeman*, 2011-Ohio-2663.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95511

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES K. FREEMAN

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-530486

**BEFORE:** S. Gallagher, J., Cooney, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** June 2, 2011

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road
Suite 405
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:  Pinkey S. Carr
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶ 1}  Appellant James Freeman ("Freeman") appeals his conviction in Cuyahoga County Common Pleas Court Case No. CR-530486 of four counts of rape in violation of R.C. 2907.02(A)(1)(c) and two counts of gross sexual imposition ("GSI") in violation of R.C. 2907.05(A)(5).   For the following reasons, we affirm the conviction and sentence.

{¶ 2}   A.S. and her family stayed at a Staybridge Suites ("Staybridge") in Mayfield Heights, Ohio, for an extended period of time because of a fire that destroyed their home. The parents were in the process of viewing temporary rentals to move the family out of the hotel and into a house or apartment while their house was being repaired.   A.S. was 15 years old at that time.   Staybridge employed the 32-year-old Freeman as a maintenance worker. A.S. had incidental contact with Freeman during her stay, and they engaged in small talk on a number of occasions.

{¶ 3}   On October 20, 2009, A.S. approached Freeman and began a conversation. A.S.'s parents left the hotel for a 15-minute trip to view a temporary home for the family. Freeman's shift had ended, and he was on his way to his van, parked in the parking lot of the hotel.   The conversation turned to whether A.S. smoked.   After discussing this, Freeman asked if A.S. wanted to smoke some marijuana.   A.S., who admitted smoking marijuana on at least two prior occasions, agreed.   A.S. told him she was only 15 years old.   Freeman drove to the store to pick up a cigarillo while A.S. went back to her room to change into her pajamas.

{¶ 4}   Upon Freeman's return, A.S. was told to wait in his van while Freeman spoke to another hotel employee.   According to Freeman, he had to purchase the marijuana from the other employee.   After the purchase, Freeman decided his current parking spot may be too conspicuous, so he moved the van, with A.S. inside, to the other side of the parking lot. The new spot was more remote, but still in the Staybridge parking lot.

{¶ 5} A.S. took three "puffs" of the marijuana, which was rolled in the cigarillo Freeman recently purchased. A.S. was talking with Freeman while they were smoking the marijuana, which, according to her testimony, was only for a few minutes. They both smoked the same marijuana. A.S. testified that she took the third puff two to three minutes after the first two because the first two were not "taking full effect." After the third, she declined further use. She felt really "zoned out," but not "zombie like." She could not grasp the reality of where she was located and what was happening. A.S. told Freeman she "was high." According to A.S., Freeman began making sexual comments and then started to caress her arm, breasts, buttocks, and vagina. A.S. never said to stop because she was zoned out and scared he would hurt her. A.S. testified at trial to telling Freeman "no" three times during the encounter and initially resisting oral sex. The sexual-assault treating nurse testified that A.S. told Freeman "no not here" at one point, but did not directly say "no." Freeman never made any threatening remarks.

{¶ 6} Freeman "nudged" A.S. to the backseat of the van where a bed was set up. Freeman used the bed to take naps during his breaks at work. The incident escalated from oral sex being performed on both to vaginal penetration. During the encounter, Freeman told A.S. that he was about to ejaculate, and she responded, "not inside of me." A.S. was concerned about pregnancy. Freeman then disclosed his vasectomy. Before she left the

van, Freeman told A.S. that this would be their little secret. Freeman claims that A.S. initiated the sexual encounter and that A.S. told him she was 18 years old.

{¶ 7} After exiting the van, A.S. started walking to the front of the Staybridge where her dad found her. A.S.'s parents had been looking for her for around 45 minutes after they came back to the hotel and realized she was not in their room. Her father walked her into the hotel and to A.S.'s mother. A.S.'s mother spoke to A.S. who disclosed the assault.

{¶ 8} Sergeant Douglas Suydam executed the arrest warrant and interviewed Freeman. Freeman told Sgt. Suydam that the marijuana was very potent or strong, referring to it as "cush," and that two or three drags will get you high. Freeman also said that A.S. mentioned she was high after the third puff and he admitted that it was wrong to give marijuana to a juvenile.

{¶ 9} After a bench trial, the trial court found Freeman not guilty of one count of kidnapping with a sexual motivation specification; not guilty to four counts of rape by using force or the threat of force, R.C. 2907.02(A)(2); and not guilty to two counts of GSI by using force or the threat of force, R.C. 2907.05(A)(1). The trial court found Freeman guilty of four counts of rape and two counts of GSI when the victim's ability to resist or consent is substantially impaired because of a physical or mental condition, R.C. 2907.02(A)(1)(c) and 2907.05(A)(5), respectively. Freeman was sentenced to an aggregate term of seven years of incarceration. This timely appeal followed.

{¶ 10} Freeman raises two assignments of error that will be dealt with together. The first assignment of error is as follows: "The evidence was insufficient to support convictions for rape and gross sexual imposition." The second assignment of error is as follows: "The convictions for rape and gross sexual imposition were against the manifest weight of the evidence." Freeman's first and second assignments of error are not well taken.

{¶ 11} In reviewing a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 12} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be reversed and a new trial ordered." (Internal citations and quotations omitted.) *State v. Leonard*, 104 Ohio St.3d at ¶ 81.

{¶ **13**} Freeman was convicted of four counts of rape in violation of R.C. 2907.02(A)(1)(c) and two counts of GSI in violation of R.C. 2907.05(A)(5). The two statutes, in pertinent part and respectively, provide as follows:

> "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

> * *

> "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."

and

> "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> * *

> "(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age."

{¶ 14} Both violations require that the defendant knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired. Freeman challenges the sufficiency and weight of evidence establishing that he was aware that the victim's ability to resist or consent was substantially impaired. For that reason, we will address both counts together.

{¶ 15} The phrase "substantially impaired" is not defined in the Ohio Revised Code. In *State v. Zeh* (1987), 31 Ohio St.3d 99, 103, 509 N.E.2d 414, the Ohio Supreme Court held that it "must be given the meaning generally understood in common usage." It is sufficient for the state to establish substantial impairment by establishing a reduction or decrease in the victim's ability to act or think. Id. at 103-04. "Substantial impairment does not have to be proven by expert medical testimony; rather, it can be shown to exist by the testimony of people who have interacted with the victim * * *." *State v. Brady*, Cuyahoga App. No. 87854, 2007-Ohio-1453, at ¶ 78. Voluntary intoxication or impairment is included in the terms "mental or physical condition" as used in R.C. 2907.02(A)(1)(c). *State v. Doss*, Cuyahoga App. No. 88443, 2008-Ohio-449, ¶ 15, citing *In re King*, Cuyahoga App. Nos. 79830 and 79755, 2002-Ohio-2313.

{¶ 16} R.C. 2907.02(A)(1)(c), and likewise R.C. 2907.05(A)(5), was not intended to criminalize sexual conduct as the result of an alcohol or

drug-induced state of lowered inhibitions. "A person's conduct becomes criminal under this section only when engaging in sexual conduct with an intoxicated victim when the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired because of voluntary intoxication." *Doss*, 2008-Ohio-449, at ¶ 15. This court previously acknowledged:

> "[T]here can be a fine, fuzzy, and subjective line between intoxication and impairment. Every alcohol consumption does not lead to a substantial impairment. Additionally, the waters become even murkier when reviewing whether a defendant knew, or should have known, that someone was impaired rather than merely intoxicated. Of course, there are times when it would be apparent to all onlookers that an individual is substantially impaired, such as intoxication to the point of unconsciousness. On the other hand, 'a person who is experiencing [an alcohol induced] blackout may walk, talk, and fully perform ordinary functions without others being able to tell that he is "blacked out."'"

Id. at ¶ 18. We see no reason to distinguish voluntarily ingesting alcohol from voluntarily ingesting drugs. See R.C. 2901.21(D). The rationale from the *Doss* court equally applies to both scenarios.

{¶ 17} There is a continuum between impairment and unconsciousness, somewhere in between being the line of what is legally sufficient to establish substantial impairment. The continuum with drugs and younger, inexperienced users can be much shorter, but the continuum exists nonetheless. Once it is established that the victim was substantially impaired, the state must establish that the defendant knew or had cause to reasonably believe the victim was substantially impaired, either physically or mentally. *Doss*, 2008-Ohio-449, at ¶ 18.

{¶ 18} On that point, the *Doss* case is instructive. The victim in *Doss* consumed excessive amounts of alcohol during the course of one New Year's Eve. She testified to blacking out around midnight and not remembering anything until eight o'clock the next morning. A bartender testified that the victim was only served water after midnight because she was severely intoxicated, slumping over while sitting at tables, and generally not being aware of her surroundings. By all outward appearances, the victim was extremely intoxicated. In reversing the conviction, the *Doss* court held that the bartender's statements about the victim "does not give rise to the inference that appellant knew, or should have known, about such impairment." Id. at 22; see, also, *State v. Schmidt*, Cuyahoga App. No. 88772, 2007-Ohio-4439 (noting the victim walked and talked normally prior to the sexual encounter and only "passed out" momentarily before the vaginal penetration for which she did not consent). Thus, the evidence establishing that the offender knew or should have known of the victim's substantial impairment is based on the totality of the circumstances surrounding the interaction between the offender and the victim.

{¶ 19} For illustrative purposes, there are numerous cases where the state established the offender's knowledge of the substantial impairment through evidence of the offender being privy to or responsible for the substance creating the substantial impairment, or the victim being asleep or unconscious. *In re King*, 2002-Ohio-2313 (noting the victim drank six to eight triple shots of hard liquor, had a blood alcohol concentration of .25 when admitted to the

hospital, and was passed out prior to the assault); *State v. Blazer*, Cuyahoga App. No. 93980, 2010-Ohio-6367 (noting the 15-year-old victim consumed a quarter of a bottle of vodka and vomited in front of the defendant before passing out while the assault occurred); *State v. Felton*, Cuyahoga App. No. 92295, 2010-Ohio-4105 (noting the victim drank 12 beers and several shots of liquor and passed out before the assault occurred); *State v. Martin* (Aug. 14, 2000), Brown App. No. CA00-09-026 (noting the victim drank ten shots of tequila and two beers before feeling numb and repeatedly vomiting in front of the defendant who supplied all the liquor); *State v. Eberth*, Mahoning App. No. 07-MA-196, 2008-Ohio-6596 (finding sufficient evidence to convict the defendant because there was evidence that defendant engaged in sexual conduct with an unconscious victim); *State v. Prater*, 12th Dist. No. CA2006-01-017, 2006-Ohio-7028 (noting that witnesses observed the victim staggering and stumbling all evening before finally passing out prior to the assault). This does not mean that every case requires proof of an unconscious, vomiting, staggering, or slurring victim. Those are just factors to consider in determining whether the victim is substantially impaired by a physical condition.

{¶ 20} In the current case, we disagree with Freeman and find there is substantial evidence establishing beyond a reasonable doubt that A.S. was substantially impaired based on her own testimony and that of her parents. A.S. testified that she was "zoning out" and "didn't grasp the * * * realization of where [she] was." She remembered feeling "buzzed"

and tired. According to A.S., she felt trapped inside her mind. In addition, both A.S.'s parents indicated that their daughter appeared to be "zoned out" and "zombie like."

{¶ 21} The more difficult issue raised is whether Freeman knew or had cause to reasonably believe that A.S.'s ability to resist or consent was substantially impaired by a physical or mental condition. To establish Freeman's knowledge, or lack thereof, we analyze all the facts and circumstances in existence at the time of the event. We initially note that during the trial, A.S. testified to telling Freeman "no" several times, trying to push him back at one point, and avoiding sexual contact another time. That testimony contradicted A.S.'s version of the incident given to the sexual-assault treating nurses the night of the assault. While A.S.'s trial testimony arguably is evidence that her ability to consent was not impaired by the more potent marijuana, the trial court was free to weigh the credibility and resolve the inconsistencies within the context of all the testimony adduced at trial. The trial court, as the trier of fact, was free to accept A.S.'s version of the incident as it was given to the sexual-assault treating nurse the night of the incident.

{¶ 22} We now look at Freeman's conduct, in relation to the victim's physical condition, to determine whether he knew or had reasonable cause to believe the victim's ability to resist or consent was substantially impaired. In this instance, Freeman supplied the substance that led to the physical impairment. It is true A.S. voluntarily smoked the marijuana, but Freeman purchased the stronger, more potent marijuana after spending enough

time with A.S. to know that the young girl was staying at the hotel with her parents. Freeman was also aware that two or three drags or puffs would make anyone high, much less a 15-year-old. A.S. told Freeman she was in fact high. The trial court reasonably concluded that Freeman was aware that A.S. was substantially impaired to the point that it affected her ability to control her conduct or resist. The sexual-assault treating nurse relayed A.S.'s statement that she did not consent or resist during the encounter. When asked by Sgt. Suydam, Freeman admitted he knew A.S. was high and was a juvenile. A.S. demonstrated a reduction in ability to control her conduct in an environment established by Freeman. She testified to being trapped in her mind. In consideration of those factors, the trial court did not err by finding that the state proved every element of rape and GSI beyond a reasonable doubt.

{¶ 23} Substantial impairment is a physical condition that must be established by facts in the record. Nevertheless, assessing the level of impairment exhibited by a victim and the offender's appreciation of that level of impairment is not done in a vacuum. The totality of facts and circumstances in existence at the moment where resistance or consent is established are all relevant in assessing the offender's knowledge of the victim's impairment.

{¶ 24} Here, Freeman not only created the victim's condition impacting her ability to resist or consent, he also controlled the environment where she would have to make such a decision. Freeman set into motion a scenario where the young victim ended up in his van in a remote part of a parking lot at night, where he supplied the marijuana with an awareness of

its potency, where he was aware of the youthfulness of A.S. and the possible effect drugs might have on her, and where she told him she was "high." In light of these circumstances and given her physical condition establishing substantial impairment, there is substantial evidence upon which the trial court could conclude that Freeman was aware that A.S. was substantially impaired to the point that it affected her ability to control her conduct or resist. Her testimony, as well as her parents' testimony, if believed, was sufficient to sustain a conviction. Furthermore, upon our review of the entire record, we do not find the conviction was against the manifest weight of the evidence.

{¶ 25} Freeman's first and second assignments of error are overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

COLLEEN CONWAY COONEY, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR