[Cite as *State v. Rivera*, 2012-Ohio-2060.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97091**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# JOHN RIVERA

DEFENDANT-APPELLANT

# JUDGMENT:
# REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546886

**BEFORE:** Keough, J., Boyle, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** May 10, 2012

**ATTORNEYS FOR APPELLANT**

Russell S. Bensing
David L. Grant
1350 Standard Building
1370 Ontario Street
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Scott Zarzycki
Edward D. Brydle
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, John Rivera, and co-defendants Kyle Noernberg and Christopher Theodus[1] were indicted in a multi-count indictment for kidnapping, rape, sexual battery, and gross sexual imposition.

{¶2} Count 1 charged kidnapping with a sexual motivation specification; Counts 2-4 charged rape by force; Counts 5-7 charged rape where the victim is substantially impaired; Counts 8-10 charged sexual battery by coercion; Counts 11-13 charged sexual battery where the victim is substantially impaired; Counts 14-16 charged gross sexual imposition by force; Counts 17-19 charged gross sexual imposition by administering a drug or intoxicant; and Counts 20-22 charged gross sexual imposition where the victim is substantially impaired. All of the counts contained sexually violent predator specifications.

{¶3} After the presentation of the State's case at trial, the defense moved for Crim.R. 29 judgment of acquittal. The trial court dismissed Count 1 (kidnapping), dismissed the duplicative rape, sexual battery, and gross sexual imposition counts, and renumbered the counts as follows: Count 1: rape by force, in violation of R.C. 2907.02(A)(2); Count 2: rape where the victim's ability to resist or consent was

---

[1] *See State v. Noernberg*, 8th Dist. No. 97126, and *State v. Theodus*, 8th Dist. No. 97290.

substantially impaired, in violation of R.C. 2907.02(A)(1)(c); Count 3: sexual battery by coercion, in violation of R.C. 2907.03(A)(1); Count 4: sexual battery where the victim's ability to appraise or control her conduct was substantially impaired, in violation of R.C. 2907.03(A)(2); Count 5: gross sexual imposition by force, in violation of R.C. 2907.05(A)(1); Count 6: gross sexual imposition by administering a drug or intoxicant, in violation of R.C. 2907.05(A)(2); Count 7: gross sexual imposition where the victim is substantially impaired, in violation of R.C. 2907.05(A)(5).

{¶4} The defense rested after presenting one witness and again moved for Crim.R. 29 acquittal, which the trial court denied. Over defense objection, the court instructed the jury on unlawful sexual conduct with a minor under R.C. 2907.04 as an inferior offense of Count 1. The jury subsequently found Rivera not guilty of rape by force, but guilty of unlawful sexual conduct with a minor (Count 1); guilty of rape where the victim's ability to resist or consent was substantially impaired (Count 2); not guilty of sexual battery by coercion (Count 3) but guilty of sexual battery where the victim's ability to appraise or control her conduct was substantially impaired (Count 4); not guilty of gross sexual imposition by force (Count 5), and not guilty of gross sexual imposition by administering a drug or intoxicant (Count 6), but guilty of gross sexual imposition where the victim is substantially impaired (Count 7).

{¶5} At sentencing, the court granted the State's request to dismiss the sexually violent predator specifications and found that the counts on which Rivera had been convicted merged as allied offenses. The State elected to proceed with sentencing under

Count 2, the rape conviction, and the court imposed a sentence of six years imprisonment. Rivera now appeals.

## I. Trial Testimony

{¶6} The evidence at trial demonstrated the following. The victim, 15-year-old, Y.B., was a troubled young girl with severe emotional and behavioral difficulties. According to Dr. Robyn Finkenthal, the psychologist at the school Y.B. attended, Y.B. had ADHD and a personality disorder that caused her to have difficulty getting along with people and to engage in behavior characterized by "a lot of drama, a lot of getting into situations [involving] risk-taking, [and] a need for attention."

{¶7} On September 14, 2010, Y.B. ran away from home for the second time in a month. Her boyfriend drove her around for a little while and then, shortly after midnight, dropped her off at her friend Ray's apartment, where Y.B. spent the night. The next day, she called Terrance Lee, a boy she had never met in person before and knew only through her Facebook page. Lee invited Y.B. to meet him and two of his friends at his apartment, so Ray took Y.B. to Lee's apartment, where she was introduced to Darrius Warrick and Rivera.

{¶8} Sometime later, Y.B., Lee, Warrick, and Rivera went to the home of co-defendant Kyle Noernberg. Kyle and co-defendant Chris Theodus arrived there a short time later and were introduced to Y.B. The group hung out in the backyard throughout the afternoon and into the evening. After Warrick left, someone suggested they get alcohol. Y.B., Rivera, Noernberg, and Theodus went to a Giant Eagle to

purchase alcohol. Y.B. testified that she told the co-defendants how old she was and that they told her to "stay in the front [of the store] because they didn't want to get in trouble."

{¶9} The group returned to Noernberg's house, where, according to Y.B., they began drinking and smoking marijuana in the backyard. Later in the evening, the group moved inside to Noernberg's bedroom, where they continued drinking. Y.B. testified that she drank more than five beers (described by another witness as 24-ounce "tall-boys") and "started feeling dizzy on — like just tired, and didn't really feel that well." She stated that Rivera, Theodus, and Noernberg all approached her as she was sitting on the edge of the bed and she tried to push them away.

{¶10} Rivera and Theodus then left the room, and Noernberg took off everything but his underwear and laid down next to Y.B. on the bed. Y.B. testified that she told Noernberg she would not take her pants off because she was a virgin and refused to have sex with him when he offered to use a condom. Y.B. stated that when Noernberg told her that she would have to leave unless she performed oral sex on him, she did so "because I didn't want to leave." Y.B. testified that after she vomited on Noernberg's penis, he left the bedroom and she overheard him telling Theodus and Rivera that she had just vomited on him and that she was a virgin. Y.B. then went to the bathroom where she cleaned herself up after vomiting again.

{¶11} Y.B. testified that after using the bathroom, she "felt okay" but was "still a little like sick" and felt "dizzy and tired." She returned to Noernberg's bedroom and Theodus came into the room. Y.B. testified that when Theodus asked for sex, she told

him no because she was a virgin and asked him, "Didn't Kyle tell you?" Y.B. said that as she was sitting on the edge of the bed, Theodus stood in front of her and "kept pushing" her to give him oral sex. Y.B. testified that she did not want to do so but eventually gave in.

{¶12} According to Y.B., Noernberg, Theodus, and Rivera then left the house and she went into the living room and watched TV for awhile with a boy she knew only as "X,"[2] and then fell asleep. Sometime later, Rivera and Noernberg returned to the house and Y.B. overheard them discussing whether she should be allowed to stay. Y.B. testified that by this time, she "felt a little better" although she "wasn't really sober." It was apparently decided that Y.B. could spend the night and she, Rivera, and Noernberg went back into Noernberg's bedroom.

{¶13} Y.B. testified that when Noernberg's mother came home a short time later, Rivera and Noernberg threw a blanket over her to hide her as she lay on the floor. According to Y.B., she said no when Rivera, who was on the floor next to her, suggested they have sex. She testified that she also told him she would not give him oral sex but relented when he told her that "he would have Kyle make me leave," even though she told him that "it was not his house to tell me if I could leave or stay." Y.B. then climbed in bed with Noernberg and they all went to sleep.

{¶14} The next morning, Noernberg, Rivera, Xavier, and Y.B. went to the library. After Noernberg and Xavier left, Rivera and Y.B. went back to Noernberg's house but

---

[2]Later identified as Xavier Gordon.

found it locked, so they went to the home of Rivera's friend Julian. Y.B. testified that the group went into the basement and started drinking, at which point she began remembering what had happened the night before. Y.B. spent the night at Julian's.

{¶15} The following morning, Julian took Y.B. to the library to meet Lee, who took Y.B. back to his house. Lee testified that Y.B.'s family had contacted him by phone and he and Warrick escorted Y.B. to a local McDonald's, where members of her family picked her up. They took Y.B. to her aunt's house, where her family and several police officers were waiting. From there, she was taken to Parma Hospital and shortly thereafter to Fairview Hospital, where she was admitted for psychiatric observation and remained for over a week.

{¶16} At the hospital, Y.B. initially refused to talk to the police and refused permission for a rape kit. When she finally spoke with the investigating detective, she told the detective that the sex had been consensual. Some months later, Y.B. repudiated her initial statement and alleged that the sex had been forced.

## II. Sufficiency of the Evidence

{¶17} Under R.C. 2907.02(A)(1)(c), which prohibits rape,

"[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *."

{¶18} Under R.C. 2907.03(A)(2), regarding sexual battery, "no person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he

offender knows that the other person's ability to appraise the nature of or control the other person's conduct is substantially impaired."

{¶19} And under R.C. 2907.05(A)(5), regarding gross sexual imposition,

> "No person shall have sexual contact with another, not the spouse of the offender, * * * when * * * [t]he ability of the other person to resist or consent * * * is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person * * * is substantially impaired because of a mental or physical condition * * *."

{¶20} Thus, to establish a violation of these statutes, the State must establish both that the victim was substantially impaired and that the defendant knew or had cause to reasonably believe the victim was substantially impaired, either mentally or physically. *State v. Freeman*, 8th Dist. No. 95511, 2011-Ohio-2663, ¶ 17.  In his first assignment of error, Rivera contends that his convictions for rape, sexual battery, and gross sexual imposition were not supported by sufficient evidence because there was insufficient evidence to show that Y.B. was substantially impaired or, even assuming evidence of substantial impairment, that he knew or should have known of that impairment.

{¶21} The test for sufficiency requires a determination of whether the State presented adequate evidence on each element of the offense to sustain the verdict as a matter of law.  *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000).  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶22}** The phrase "substantially impaired'" is not defined in the Ohio Revised Code but "must be given the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987). The State may demonstrate substantial impairment by offering evidence at trial establishing a reduction or decrease in the victim's ability to act or think. *Id.* at 103-104. Voluntary intoxication or impairment is a "mental or physical condition" that could cause substantial impairment. *State v. Doss*, 8th Dist. No. 88443, 2008-Ohio-449, ¶ 13, citing *In re King*, 8th Dist. Nos. 79830 and 79755, 2002-Ohio-2313. Nevertheless, the statutes do not criminalize sexual conduct resulting from an alcohol or drug-induced state of lowered inhibitions. *Freeman* at ¶ 16. Rather, "a person's conduct becomes criminal under [the statutes] only when engaging in sexual conduct with an intoxicated victim when the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is *substantially impaired* because of voluntary intoxication." *Doss* at ¶ 13, citing *State v. Martin*, 12th Dist. No. CA99-09-026, 2000 WL 1145465 (Aug. 14, 2000) (emphasis in original).

**{¶23}** In this case, we do not find sufficient evidence that Y.B. was substantially impaired, either physically or mentally, to support Rivera's convictions for rape, sexual battery, and gross sexual imposition. The only evidence regarding Y.B.'s impairment came from Y.B., and nothing in her testimony supports a conclusion that she was substantially impaired on the night in question. Although she testified that she smoked marijuana that night, she also admitted that prior to this she had smoked marijuana "a

lot"[3] and taken other drugs as well. And although she testified this was the first time that she ever consumed alcohol, Cleveland police detective Cindy Eschweiler, who spoke with Y.B. on September 17 at Fairview Hospital, testified that Y.B. told her she was surprised she became intoxicated that night based on her prior experience with drinking.

{¶24} Although Y.B. testified that she had five beers and "wasn't really sober," she described her condition only as "feeling dizzy" and "just like tired." And as it relates to Rivera, Y.B. testified that by the time she went into Noernberg's bedroom with Noernberg and Rivera, immediately before she had oral sex with Rivera, she "was feeling better." Y.B. also testified that she never blacked out or lost consciousness that night and that although she was not sober, she knew what was happening.

{¶25} In fact, Y.B.'s testimony demonstrated that she was aware of the events as they happened and made conscious decisions about her participation. She was fully able to say "no" to intercourse, and give her reason as to why: she wanted to remain a virgin. She was also able to explain the reason she ultimately agreed to give oral sex to at least two of the males, i.e., she did not want them to kick her out of Noernberg's home.

{¶26} The other witnesses who testified did not observe that Y.B. was impaired at all, let alone substantially. Darrius Warrick testified that Y.B. "seem[ed] like she was having a good time" while the group was drinking in the backyard of Noernberg's house. Xavier Gordon corroborated that account. He also testified that when Y.B. came out of

---

[3]Y.B.'s 11/09/10 Evaluation Team Report from the school she attended indicated that she had abused alcohol and drugs for the last several years, including daily marijuana use.

Noernberg's bedroom and sat with him on the couch, after she had performed oral sex on two people, he noticed nothing unusual about her behavior.

{¶27} As this court recognized in *Doss*, "[t]here can be a fine, fuzzy, and subjective line between intoxication and impairment. Every alcohol consumption does not lead to a substantial impairment." *Id.* at ¶ 18. In this case, although Y.B. was intoxicated, it is apparent from her own testimony that she was not substantially impaired.

{¶28} Moreover, even assuming evidence of substantial impairment, there is nothing in the record to demonstrate that Rivera knew or had cause to reasonably believe that Y.B. was substantially impaired to the point that it affected her ability to control her conduct. There is no evidence that Y.B. was slurring her words, passed out, or unable to control her actions. To the contrary, Y.B.'s testimony indicated that although she may have been intoxicated, she was aware of her surroundings and coherent enough to make decisions about the extent of her participation in the events in question.

{¶29} Because the evidence was insufficient to demonstrate beyond a reasonable doubt that Y.B. was substantially impaired, or that Rivera was aware or should have been aware that her ability to resist was substantially impaired, the trial court erred in denying Rivera's Crim.R. 29 motion for acquittal regarding rape, sexual battery, and gross sexual imposition.

{¶30} The first assignment of error is sustained; appellant's convictions for rape, sexual battery, and gross sexual imposition are vacated.

### III. Manifest Weight of the Evidence

**{¶31}** In his second assignment of error, Rivera contends that his convictions for rape, sexual battery, and gross sexual imposition were against the manifest weight of the evidence.

**{¶32}** A manifest weight challenge questions whether prosecution met its burden of persuasion. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶33}** In light of our holding that there was insufficient evidence to sustain Rivera's convictions for rape, sexual battery, and gross sexual imposition, this assignment of error is moot and we need not consider it. App.R. 12(A)(1)(c).

### IV. Unlawful Sexual Conduct with a Minor

**{¶34}** In his third assignment of error, Rivera contends that the trial court erred in instructing the jury on unlawful sexual conduct with a minor as an inferior offense of rape. Rivera ackowledges that in *State v. Hairston*, 121 Ohio App.3d 750, 700 N.E.2d 930 (8th Dist.1997) and *State v. Doss*, 8th Dist. No. 890811, 2003-Ohio-4398, this court recognized that unlawful sexual conduct with a minor is an offense of inferior degree to the charge of rape, but he respectfully asserts that these cases were wrongly decided.

The record reflects that Rivera did not raise this argument below, however,[4] and therefore he has waived it for purposes of appeal. *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977). Nevertheless, we vacate Rivera's conviction for unlawful sexual conduct with a minor because there was insufficient evidence to sustain his conviction.

**{¶35}** R.C. 2907.04, prohibiting unlawful sexual conduct with a minor, states that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard."

**{¶36}** As provided by the statute, the age of the offender is an essential element of the offense and must be proven by the State beyond a reasonable doubt. *State v. Wright*, 8th Dist. No. 93068, 2011-Ohio-3575, ¶ 26, citing *State v. Price*, 80 Ohio App.3d 35, 608 N.E.2d 818 (3d Dist.1992). Age may be proved by circumstantial evidence, but the jury's observations of the defendant alone are not sufficient. *Id.*

**{¶37}** Here, the State presented no direct evidence of Rivera's age at trial.[5] And the only circumstantial evidence regarding his age was Y.B.'s testimony that Rivera, Theodus, and Noernberg went to Giant Eagle to purchase alcohol on the night in question.

---

[4]Rivera's counsel argued that the evidence was not sufficient to support a charge of unlawful sexual conduct with a minor, but did not argue that the offense is not an inferior offense of rape.

[5]During opening statement, the prosecutor described the defendants as "one 19, one 19, and the other one 21 years old," but the State did not produce any evidence of the defendants' ages at trial.

But that testimony does not demonstrate beyond a reasonable doubt that Rivera was 18 years of age or older. Because there was no other evidence relating to Rivera's age, any conclusions the jury made about his age based solely on their observations of him at trial are insufficient to establish this element of the offense.

{¶38} Further, even if we did not vacate on a sufficiency analysis, we would vacate and remand for retrial on this count because the trial court improperly instructed the jury regarding this offense. The court instructed that "[u]nlawful sexual conduct with a minor is having sexual conduct with another who was not his spouse and the defendant knew that she was 13 years old, 13 years of age or older, but less than 16 years of age, or the defendant was reckless in this regard." The trial court gave no instruction that the jury was required to find that Rivera was 18 years of age or older as an element of this offense.

{¶39} Appellant's third assignment of error is therefore sustained. Even viewing the evidence in a light most favorable to the prosecution, it is apparent the State did not present sufficient evidence of Rivera's age to sustain his conviction for unlawful sexual conduct with a minor. His conviction is therefore vacated.

{¶40} Because we vacate Rivera's conviction for unlawful sexual conduct with a minor, Rivera's fourth assignment of error, in which he argues that his conviction for unlawful sexual conduct with a minor is a first degree misdemeanor, and not a fourth degree felony, is moot. App.R. 12(A)(1)(c). Likewise, Rivera's fifth assignment of error,

which asserts that the trial court should have declared a mistrial after the prosecutor referred to the fact that Theodus was in jail, is moot.

{¶41} Appellant's first, second, and third assignments of error are sustained; the fourth and fifth assigments of error are overruled. Appellant's convictions are vacated; the matter is remanded with instructions to the trial court to enter a judgment entry vacating appellant's convictions and his classification as a Tier III sex offender.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
JAMES J. SWEENEY, J., CONCUR