[Cite as *State v. Buzanowksi*, 2014-Ohio-1947.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99854**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WOJCIECH BUZANOWSKI

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-10-540907

**BEFORE:** E.A. Gallagher, J., Rocco, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 8, 2014

**ATTORNEYS FOR APPELLANT**

Mark R. Devan
Steven D. Shafron
Berkman, Gordon, Murray & Devan
55 Public Square
Suite 2200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Adam M. Chaloupka
          Scott Zarzycki
Assistant County Prosecutors
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant Wojciech Buzanowski appeals his convictions from the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm, in part, reverse, in part, and remand.

{¶2} A true bill indictment was returned against Buzanowski, charging him with two counts of rape, two counts of sexual battery, kidnapping, gross sexual imposition, unlawful sexual conduct with a minor and three counts of contributing to the unruliness or delinquency of a minor. Buzanowski pleaded not guilty to the indictment, and the case proceeded to a jury trial.

{¶3} At the conclusion of the state's case the trial court granted a Crim.R. 29 motion dismissing one count of rape and two counts of contributing to the unruliness or delinquency of a minor. The jury found Buzanowski not guilty of the two counts of sexual battery and kidnapping but guilty of the remaining count of contributing to the unruliness or delinquency of a minor. The jury was unable to reach a verdict on the counts of rape, gross sexual imposition and unlawful sexual conduct with a minor. The trial court declared a mistrial as to those counts.

{¶4} Prior to retrial, Buzanowski filed a motion to dismiss the count of rape based on double jeopardy grounds, and the trial court granted the motion. The case proceeded to a second jury trial on the charges of gross sexual imposition and unlawful sexual conduct with a minor.

**{¶5}** The following facts were adduced at Buzanowski's second trial: on the night of December 23, 2009, H.K. and two female friends, A.K. and M.B., were at A.K.'s home coloring M.B.'s hair. At the time, H.K. and A.K. were 15 years of age and M.B. was 17. M.B. received a phone call from Buzanowski inviting her to come to his home to hang out. M.B., H.K. and A.K. agreed to go to Buzanowski's home but concocted a story about going to the movies to tell to their parents.

**{¶6}** At Buzanowski's home the girls met Buzanowski and his friend Nenad Banic in the living room. Buzanowski's roommate, Matej Milos, was also at the house but he lived in the basement and spent the majority of the evening there playing video games. Buzanowski asked the girls how old they were before offering everyone a shot of cherry vodka. H.K. testified that she informed Buzanowski that she was 15 years old and a sophomore in high school. H.K.'s testimony was contradicted by A.K., M.B., Banic and Milos, all of whom asserted that there was no precise discussion of age but rather that H.K. told Buzanowski that they were "old enough to party" or some close variation.

**{¶7}** While in the living room, H.K. drank two to three shots of vodka. At one point she began dancing near Buzanowski and eventually sat on his lap and "straddled" him. H.K. and Buzanowski began to "make out," causing A.K., M.B. and Banic to feel uncomfortable and then leave the living room and go to the kitchen. The bottle of cherry vodka remained in the living room with H.K. and Buzanowski. A.K. "peeked" into the living room from the kitchen and saw H.K. on Buzanowski's lap. A.K. did not believe

H.K. to be intoxicated. A.K. saw Buzanowski's hand on H.K.'s crotch but did not intervene because she felt H.K. was fine, acting on her own accord, and that the activities with Buzanowski were consensual.

{¶8} After 30 to 45 minutes A.K., M.B. and Banic returned to the living room and found that H.K. and Buzanowski had left the room and the door to Buzanowski's bedroom was closed. H.K. testified that she was feeling drunk and that Buzanowski took her to his bedroom. H.K. testified that Buzanowski had to help her to the bedroom because she was stumbling and could not walk by herself. H.K. remembered being in a state of undress but did not know how she came to that condition. Buzanowski was also undressed. H.K. testified that Buzanowski was on top of her, vaginally penetrating her with his penis. She testified that during this time she was blacking out and "coming in and out" of consciousness. She eventually vomited over the side of Buzanowski's bed and left the room.

{¶9} A.K., M.B. and Banic were in the living room when H.K. exited the bedroom. H.K. testified that she immediately told A.K. that Buzanowski had raped her. No other witness, including A.K., testified to this. A.K. testified that she left Buzanowski's home that night believing that everything that had occurred between H.K. and Buzanowski was consensual. A.K. and M.B. agreed that when H.K. exited the bedroom her appearance, including her clothing and hair, was disheveled. M.B. described H.K. as drunk and slurring her speech, however, M.B. testified that H.K. was not so impaired that she did not know what was going on. A.K. testified that H.K. was

stumbling when she exited the bedroom and that she joined H.K. in the bathroom where H.K. vomited.

{¶10} During this time period H.K.'s father began repeatedly calling H.K.'s phone. The girls were afraid to answer his calls because he was described as a strict and intimidating parent and they feared his wrath when he discovered that H.K. was intoxicated. H.K. wanted to go home because of the repeated phone calls and the late hour that was considerably past her curfew. A.K. left Buzanowski's home before H.K. and M.B. because she had an earlier curfew. M.B. drove H.K. home and testified that Buzanowski helped her to the car where they hugged. M.B. testified that there was no discussion of Buzanowski on the ride home but rather the focus was on everyone having their stories straight about going to the movies. In contrast, H.K. denied any recollection of the movie cover story. When M.B. dropped H.K. off at her home, H.K. walked from the curb to the house unassisted.

{¶11} H.K.'s father discovered H.K. intoxicated when she returned home and demanded answers from A.K. and M.B. A.K. testified that he called her 20 times and she divulged to him what she knew of H.K.'s drinking and interactions with Buzanowski after she was threatened by H.K.'s father. H.K.'s father spoke with an officer of the city of Parma Heights police department the next morning and was advised to take H.K. to Fairview Hospital to have a rape kit performed. At Fairview, H.K. spoke with both a SANE nurse and Detective Jim Griffith of the Parma Heights police department outside the presence of her father. Although H.K.'s narrative history to the SANE nurse made

no mention of any sexual conduct, on the assault history form she checked a box for "vaginal penetration" by "penis" and denied any anal penetration. Detective Griffith spoke with her at the hospital but she again omitted details of any sexual conduct. Detective Griffith testified that he did not receive a full statement from H.K. until July 2010. Detective Griffith also testified that H.K. had failed to report key details such as her claim at trial that she had informed Buzanowski that she was 15 and that she told Buzanowski "no" during their sexual conduct.

{¶12} Forensic scientists from the Ohio B.C.I. testified that vaginal, anal and oral swabs from H.K.'s SANE exam as well as underwear recovered from H.K. were tested and compared to samples obtained from Buzanowski. Semen matching Buzanowski's DNA was identified on both the anal swab and H.K.'s underwear.

{¶13} At the conclusion of the second trial, the jury returned guilty verdicts against Buzanowski on both counts: gross sexual imposition and unlawful sexual conduct with a minor. The trial court sentenced Buzanowski to two years of community control sanctions including a six-month term in the Cuyahoga County jail and classified him as a Tier II sex offender. Buzanowski appeals, asserting five assignments of error.

{¶14} Buzanowski's first assignment of error states:

The trial court erred in failing to instruct the jury on the issue of recklessness, an essential element of the offense of contributing to [the] unruliness or delinquency of a child, R.C. 2919.24(A)(1).

{¶15} R.C. 2919.24(A)(1) provides in pertinent part that

No person * * * shall do any of the following: (1) Aid, abet, induce, cause, encourage, or contribute to a child * * * becoming an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2152.02 of the Revised Code * * *.

**{¶16}** The Ohio Supreme Court has held that recklessness is the culpable mental state that applies to the offense of contributing to the unruliness or delinquency of a child under R.C. 2919.24. *State v. Moody*, 104 Ohio St.3d 244, 2004-Ohio-6395, 819 N.E.2d 268; *State v. Middleton*, 12th Dist. Warren No. CA2012-08-082, 2013-Ohio-1848, ¶ 9. A person acts "recklessly" when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C). A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. *Id*.

**{¶17}** The trial court failed to instruct on recklessness as an element of contributing to the unruliness or delinquency of a child. However, a defendant may not assign as error the giving or omitting any instructions unless he objects before the jury retires and further objects by "stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). The record reflects that Buzanowski failed to object to the instruction at trial and, therefore, has waived all but plain error on appeal. *State v. Burns*, 8th Dist. Cuyahoga No. 95465, 2011-Ohio-4230, ¶ 9. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).

> As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error.

*State v. Adams*, 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980). However, a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not per se constitute plain error nor does it necessarily require reversal of a conviction. Only by reviewing the record in each case can the probable impact of such a failure be determined, and a decision reached as to whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice.

*Id.* An erroneous jury instruction does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Burns*, 8th Dist. Cuyahoga No. 95465, 2011-Ohio-4230, ¶ 10, citing *State v. Cooperrider*, 4 Ohio St.3d 226, 227, 448 N.E.2d 452 (1983).

**{¶18}** We find that the trial court's failure to instruct the jury on the culpable mental state that applies to the offense of contributing to the unruliness or delinquency of a child resulted in a manifest miscarriage of justice in this case. Unlike *Adams*, the mental state of Buzanowski, and specifically, his knowledge of the victim's age prior to offering her alcohol, was heavily disputed in the first trial. The state presented evidence that H.K. informed Buzanowski that she was 15 years old and only a sophomore in high school prior to offering her alcohol. However, H.K. offered this testimony for the first

time at trial and admitted that she had omitted this key fact from her numerous prior statements of what had occurred. In contrast, during the first trial three of the four other witnesses to the events testified that when Buzanowski inquired if she was old enough to drink, H.K. responded with some variation of "old enough to party." The fourth witness did not recall any discussion of age. Two different witnesses, including H.K.'s own friend M.B., testified that H.K. presented the appearance of a 19 to 20 year old. M.B., who was 17 years old at the time, explained that H.K. had on makeup, her hair was teased up and that people commonly thought H.K. was older than her despite their age difference.

{¶19} Thus, although there was some testimony from which one could possibly infer that Buzanowski had reason to believe H.K. was under 18 years old, such an inference was not required based upon the evidence. Thus, given the omission of the recklessness standard that the jury was required to apply to Buzanowski's actions for the offense of contributing to the unruliness or delinquency of a child under R.C. 2919.24 and the significant testimony that H.K. verbally implied and physically appeared to be 19 to 20 years old or older, this court concludes the erroneous instruction constituted plain error.

{¶20} Buzanowski's first assignment of error is sustained.

{¶21} Buzanowski's second assignment of error states:

The evidence was insufficient to support a conviction for gross sexual imposition, R.C. 2907.05(A)(5), where the evidence was that at the time

that the appellant and the complainant were engaged in sexual contact, she recalled specific events before, during and after sexual activity and there was no evidence that she was substantially impaired or that the appellant knew or should have known she was substantially impaired, and the trial court erred in denying his motion for a judgment of acquittal of gross sexual imposition.

**{¶22}** This court has said that, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry then is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

**{¶23}** Buzanowski was charged with gross sexual imposition in violation of R.C. 2907.05(A)(5), which provides in pertinent part:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

\* \* \*

(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a

mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

**{¶24}** A.K.'s testimony established that sexual contact occurred in the living room when Buzanowski had his hand on H.K.'s crotch as well as in the bedroom when his penis touched her vagina. *See*, *e.g.*, *State v. Ball*, 4th Dist. Hocking No. 07CA2, 2008-Ohio-337, ¶ 27 (holding that a defendant's touching of a victim's mouth with his penis constituted sexual contact); *State v. Lemasters*, 8th Dist. Cuyahoga No. 97611, 2012-Ohio-3080, ¶ 10 (noting that there may be circumstances in which gross sexual imposition and rape could be allied offenses of similar import).

**{¶25}** The sole question remaining is whether the state presented sufficient evidence that Buzanowski knew or had reasonable cause to believe that H.K. was substantially impaired. The phrase "substantially impaired" is not defined in the Ohio Revised Code but "must be given the meaning generally understood in common usage." *State v. Zeh*, 31 Ohio St.3d 99, 103, 509 N.E.2d 414 (1987). In *Zeh*, the Ohio Supreme Court held that the state may establish substantial impairment at trial through evidence showing a reduction or decrease in the victim's ability to act or think. Voluntary intoxication is a "mental or physical condition" that could, at times, cause substantial impairment. *State v. Theodus*, 8th Dist. Cuyahoga No. 97290, 2012-Ohio-2064, ¶ 8.

**{¶26}** However, the statutes do not criminalize sexual conduct resulting from an alcohol or drug-induced state of lowered inhibitions. *State v. Freeman*, 8th Dist. Cuyahoga No. 95511, 2011-Ohio-2663, ¶ 17. Rather, a person's conduct becomes criminal under R.C. 2907.05(A)(5) only when engaging in sexual contact with an intoxicated victim when the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired because of voluntary intoxication. *State v. Rivera*, 8th Dist. Cuyahoga No. 97091, 2012-Ohio-2060, ¶ 22.

**{¶27}** Even if it could be argued that the testimony failed to establish that H.K. was substantially impaired at the time of the conduct in the living room, the state certainly presented sufficient evidence that H.K. was substantially impaired in the bedroom. H.K. testified that she drank two to three shots of vodka in the living room. While she stated that she was merely "tipsy" in the living room, she testified that she felt drunk when she left the living room to go to the bedroom and at that point she stumbled and needed Buzanowski's assistance to walk. In addition to H.K.'s own testimony regarding blacking out in the bedroom, witnesses observed H.K.'s intoxicated state when she left the bedroom.

**{¶28}** We find that the state presented sufficient evidence that Buzanowski knew or had reasonable cause to believe that H.K. was substantially impaired at the time of the gross sexual imposition.

**{¶29}** Buzanowski's second assignment of error is overruled.

**{¶30}** Buzanowski's third assignment of error states:

The appellant's conviction of gross sexual imposition should be reversed because his re-trial and conviction of that offense was barred by the collateral estoppel component of the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

{¶31} Buzanowski argues that the state was barred from pursuing a re-trial on the charge of gross sexual imposition after the jury in the first trial was hung on that count. Buzanowski's argument is based on the fact that the jury in his first trial acquitted him of sexual battery and, thus, determined that either H.K. was not substantially impaired or that he did not know or have cause to reasonably believe that she was so impaired. Buzanowski argues that because the jury, in acquitting him of sexual battery, determined this factual issue in his favor, under the doctrine of collateral estoppel he could not be subject to a second trial where the same factual issue would need to be determined *against* him in order to convict him of gross sexual imposition. For the reasons below, we find his argument persuasive.

{¶32} The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Fifth Amendment to the U.S. Constitution. This is enforceable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Double Jeopardy Clause bars not only multiple punishments for the same offense but also affords protection against successive prosecutions for the same offense

after acquittal or conviction. *State v. Edwards*, 8th Dist. Cuyahoga Nos. 94568 and 94929, 2011-Ohio-95, ¶ 17, citing *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

"Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first." *Id.* at ¶ 19, quoting *Brown*.

**{¶33}** The United States Supreme Court held that the rule of collateral estoppel is embodied by the Fifth Amendment guarantee against double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970).

> Collateral estoppel is the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings. Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

(Internal citation omitted.) *State v. Potter*, 8th Dist. Cuyahoga No. 90821, 2008-Ohio-5265, ¶ 24, quoting *State v. Lovejoy,* 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997).

**{¶34}** In *Lovejoy,* a jury found the defendant not guilty as to some counts, but was hung as to other counts. The Ohio Supreme Court rejected the application of double

jeopardy and collateral estoppel to the hung counts based on the jury's inconsistent responses to different counts.[1]

{¶35} In 2009, the United States Supreme Court addressed the convergence of double jeopardy, collateral estoppel and hung counts in *Yeager v. United States*, 557 U.S. 110, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). In *Yeager*, the defendant was charged with securities and wire fraud, insider trading and money laundering. The jury acquitted Yeager on the fraud counts but failed to reach a verdict on the insider trading and money laundering counts. The government recharged Yeager with some of the insider trading and money laundering counts. Although the Circuit Court of Appeals in *Yeager* concluded that the jury must have found when it acquitted Yeager that he did not have any insider information, the court refused to apply collateral estoppel to his subsequent re-prosecution on the insider trading and money laundering counts due to the inconsistency between the acquittals and the hung counts.

{¶36} The Supreme Court reversed and overruled the "inconsistency" analysis relied upon by the Court of Appeals. The court recognized that the doctrine of collateral estoppel extended to criminal proceedings including those where a jury reaches a verdict on some counts but is hung on others. The court held that in order to decipher

---

[1] However, this court noted in *State v. Dunbar*, 8th Dist. Cuyahoga No. 87317, 2007-Ohio-3261, that the Sixth Circuit essentially reversed the Supreme Court of Ohio when it granted Lovejoy's writ of habeas corpus by determining that collateral estoppel applied to bar Lovejoy's subsequent prosecution. The Sixth Circuit "reasoned that because his first trial had resulted in a hung jury on the issues of identity and intent to kill, that these issues were previously decided in Lovejoy's favor and could not be relitigated." *Id.* at fn. 6.

what a jury has decided, courts should examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. *Id*. at 120. The court held that a hung count is not a relevant part of the record of the prior proceeding, stating: "Because a jury speaks only through its verdict, its failure to reach a verdict cannot — by negative implication — yield a piece of information that helps put together the trial puzzle." *Id*. at 121. Accordingly, the court found that the consideration of hung counts has no place in the issue-preclusion analysis. The court concluded that if a jury decided a critical issue of ultimate fact in favor of a defendant, then he was protected from further prosecution for any charge for which that fact is an essential element. *Id*. at 123.

{¶37} In addition to gross sexual imposition in violation of R.C. 2907.05(A)(5), defined above, Buzanowski was charged, and acquitted, of the crime of sexual battery in violation of R.C. 2907.05(A)(2), which provides in pertinent part:

> (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

> (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

{¶38} Buzanowski correctly notes that he did not contest at trial the fact that sexual conduct occurred between himself and H.K. H.K.'s testimony was the only account of what occurred in the bedroom. In fact, the defense acknowledged this point in closing argument stating:

The semen that was present, yeah, semen was present. I mean, it wasn't a big issue in the case, because no one is saying that nothing happened. So the presence of the semen, again, as I said, * * * the scientists said the presence of semen does not mean that anything was done by force or in violation of law.

{¶39} The record reflects that Buzanowski instead contested H.K.'s alleged impairment and argued that the sexual conduct was consensual. H.K.'s testimony that sexual conduct occurred was uncontroverted and strongly supported by DNA evidence.

{¶40} Although gross sexual imposition requires only sexual contact while sexual battery requires sexual conduct, as discussed in Buzanowski's second assignment of error, the undisputed testimony of H.K. that Buzanowski vaginally penetrated her with his penis constituted both sexual conduct as well as sexual contact. As the elements of sexual conduct and sexual contact were not in dispute at trial, we can only conclude that the jury's acquittal on the sexual battery was based upon the element of substantial impairment.

{¶41} This court has previously noted that to establish a violation of either gross sexual imposition or sexual battery, the state must establish both that the victim was substantially impaired and that the defendant knew or had cause to reasonably believe the victim was substantially impaired, either mentally or physically. *State v. Rivera*, 8th Dist. Cuyahoga No. 97091, 2012-Ohio-2060, ¶ 20.

**{¶42}** We are left with the inescapable conclusion that the jury in Buzanowski's first trial concluded that either H.K. was not substantially impaired or at the very least Buzanowski lacked knowledge of such impairment. Because the jury resolved this factual issue in favor of Buzanowski when it acquitted him of sexual battery in violation of R.C. 2907.05(A)(2) at his first trial, pursuant to *Yeager* the state was precluded from retrying him on the hung count of gross sexual imposition for which that fact was an essential element.

**{¶43}** Buzanowski's third assignment of error is sustained.

**{¶44}** Buzanowski's fourth assignment of error states:

The trial court committed reversible error when, over objection, it allowed the SANE nurse's transcription of the complainant's statement into evidence, which constituted inadmissible hearsay, and then included that statement in exhibits that were sent to the jury for consideration during its deliberations.

**{¶45}** Buzanowski argues that the trial court erred in admitting into evidence a narrative statement recorded by the SANE nurse during her examination of H.K. The nurse testified that the narrative reflected the recounting of the incident in H.K.'s own words. Buzanowski contends that H.K.'s statements made during the medical examination were hearsay and were not made for the purposes of medical diagnosis or treatment and, therefore, did not fall within the hearsay exception under Evid.R. 803(4).

**{¶46}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence. Should hearsay statements be admitted improperly, however, such error does not necessarily require reversal of the outcome of the trial if it was harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 306-309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

**{¶47}** Crim.R. 52(A) describes a harmless error as one that "does not affect substantial rights [and therefore] shall be disregarded." In order to find harmless error in a criminal matter, a reviewing court must find that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). When determining whether the admission of evidence is harmless, this court must find that "there is no reasonable probability that the evidence may have contributed to the defendant's conviction." *State v. Walker*, 8th Dist. Cuyahoga No. 68889, 1996 Ohio App. LEXIS 1691 (Apr. 25, 1996), citing *State v. Johnson*, 71 Ohio St.3d 332, 643 N.E.2d 1098 (1994).

**{¶48}** Evid.R. 803(4) allows, as an exception to the hearsay rule, the admission of "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." The staff notes to the rule provide in pertinent part:

The circumstantial guaranty of trustworthiness of this exception is derived from the assumption that a person will be truthful about his physical condition to a physician because of the risk of harmful treatment resulting from untruthful statements. * * * The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted.

Staff Notes to Evid.R. 803(4).

{¶49} "When examining the admissibility of hearsay statements under Evid.R. 803(4), the primary inquiry is whether the statements were made for the purposes of medical diagnosis or treatment, as opposed to some other purpose." *Fields v. CSX Transp., Inc.*, 197 Ohio App.3d 561, 2011-Ohio-6761, 968 N.E.2d 70, ¶ 17 (8th Dist.). As stated by the Ohio Supreme Court: "The test under Evid.R. 803(4) goes solely to whether a statement was made for purposes of medical diagnosis or treatment. If a statement is made for purposes of diagnosis or treatment, it is admissible pursuant to Evid.R. 803(4)." *State v. Dever*, 64 Ohio St.3d 401, 414, 596 N.E.2d 436 (1992).

{¶50} The narrative in this instance contains scant information that could be used for medical diagnosis or treatment. In fact, the narrative noticeably omits any mention of sexual contact or sexual conduct between Buzanowski and H.K. This point was not lost upon Buzanowski's trial attorney who used it to attack the credibility of H.K. at trial.

**{¶51}** Although the narrative statement is not protected by the hearsay exception under Evid.R. 803(4), we find that the admission of these hearsay statements did not violate appellant's confrontation rights, and constituted harmless error. Therefore, we do not find that reversal is required in this matter.

**{¶52}** H.K., the declarant, testified at trial and was subject to cross-examination. Because defense counsel was able to cross-examine H.K., appellant's confrontation rights were not violated. *See State v. Simmons*, 8th Dist. Cuyahoga No. 98613, 2013-Ohio-1789, ¶ 27, citing *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 48. Furthermore, the SANE nurse testified at trial and the defense cross-examined her on her recitation of H.K.'s statements.

**{¶53}** Additionally, the error in admitting H.K.'s narrative was harmless pursuant to Crim.R. 52(A) because it was merely cumulative to the admissible testimony of H.K. *Id*. at ¶ 28, citing *State v. Greer*, 8th Dist. Cuyahoga No. 91983, 2009-Ohio-4228, ¶ 59. H.K. took the stand and provided testimony regarding the events of the night including the information provided in her narrative. In fact, the narrative was actually a detriment to the state's case as it omitted any mention of sexual conduct and many other important details to which H.K. incongruously testified at trial. The narrative was actually a key component of Buzanowski's argument that H.K. repeatedly offered different accounts of the events that night and lacked credibility.

**{¶54}** It cannot be said that the result of the trial would have been otherwise, absent the inclusion of the narrative at trial. We, therefore, find that the trial court's error in admitting the narrative was harmless.

**{¶55}** Buzanowski's fourth assignment of error is overruled.

**{¶56}** Buzanowski's fifth assignment of error states:

> The appellant's convictions for gross sexual imposition and unlawful sexual conduct with a minor are against the manifest weight of the evidence where the complainant admitted that her statements to law enforcement personnel, family and hospital staff were not consistent with her testimony, that she could not recall many of the facts, that her version of the facts changed over time, and where all of the state's witnesses contradicted the complainant's testimony on essential elements of the offenses.

**{¶57}** Buzanowski argues that his convictions were against the manifest weight of the evidence. A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*.

**{¶58}** Having found that Buzanowski's conviction for gross sexual imposition was barred by double jeopardy, we need not address that charge here. Buzanowski was

convicted of unlawful sexual conduct with a minor in violation of R.C. 2907.04, which provides in pertinent part:

> (A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

{¶59} As Buzanowski has not disputed that sexual conduct occurred between himself and H.K., the sole question before this court on his manifest weight challenge is: was Buzanowski reckless in regards to H.K. being less than 16 years old? Viewing the entire record, the evidence regarding H.K.'s age in this case is such that the jury clearly lost its way in finding that Buzanowski was reckless in regards to H.K. being less than 16 years old at the time of their interaction.

{¶60} On December 23, 2009, H.K. was 15 years old and turned 16 two months later, on February 28, 2010. As mentioned above, H.K. testified that she informed Buzanowski that she was 15 years old and only a sophomore in high school prior to consuming alcohol. However, H.K. admitted that she had failed to divulge this important detail to the investigating detective, or anyone else, despite numerous opportunities and claimed that for the first time at Buzanowski's first trial. Furthermore, this testimony was directly contradicted by *every other witness* to the events. A.K., M.B., Banic and Milos universally agreed that there was no precise discussion of age but rather when questioned regarding being old enough to drink, H.K. told Buzanowski that the girls were "old enough to party" or some close variation.

{¶61} M.B., whom Buzanowski knew to be 17 years old at the time, testified that people commonly thought H.K. was older than she. She explained that H.K. wore quite a bit of makeup, wore high heels, had her hair teased and was dressed up on December 23, 2009. M.B. testified that H.K. appeared to be 19 or 20 on the night of the incident and at the very least looked 18 years of age. A.K. agreed with M.B.'s description of H.K that night and testified that H.K. always looked older. Banic also testified that H.K. appeared to be 18 or 19 years old. Milos testified that he was not sure H.K. was old enough to drink but did not think she was less than 16 years old.

{¶62} Considering the entire record, particularly the consistent testimony of the four eyewitnesses regarding H.K.'s appearance on December 23, 2009, as well as statements regarding age, this is the rare instance where the finder of fact clearly lost its way and created such a manifest miscarriage of justice. However, because there is not unanimity on this issue, the unlawful sexual conduct conviction is affirmed. Reversing a conviction on the manifest weight of the evidence requires the unanimous concurrence of all three appellate judges. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), at paragraph four of the syllabus, citing Section 3(B)(3), Article IV of the Ohio Constitution (noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

{¶63} Buzanowski's fifth assignment of error is overruled.

**{¶64}** Buzanowski's convictions for contributing to the unruliness or delinquency of a minor and gross sexual imposition are reversed. Case remanded for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
KENNETH A. ROCCO, P.J., CONCURS IN PART AND
DISSENTS IN PART (SEE SEPARATE OPINION)


KENNETH A. ROCCO, P.J., CONCURRING AND DISSENTING:

**{¶65}** Although I concur with the majority opinion with respect to its disposition of Buzanowski's first, second, and fourth assignments of error, I respectfully dissent with respect to the majority opinion's disposition of Buzanowski's third assignment of error.

In addition, I would add that I cannot find that Buzanowski's convictions are against the manifest weight of the evidence.

{¶66} A review of the record in this case supports the majority opinion's disposition of Buzanowski's first assignment of error for a simple reason. The jury easily could have presumed from the instruction the trial court provided on the charge of contributing to the unruliness or delinquency of a child that the offense was one of strict liability. The victim testified that she was fifteen years old at the time of the offense. Without an explanation of the culpable mental state required to prove Buzanowski's guilt, that information was all the jury needed to convict him.

{¶67} Similarly, I agree with the majority's decision that the admission of the sexual assault nurse examiner's testimony constituted harmless error. I diverge from the majority opinion, however, in my review of his third assignment of error and the evidence presented to support Buzanowski's guilt on the charges of gross sexual imposition and unlawful sexual conduct with a minor.

{¶68} Buzanowski argues in his third assignment of error that, because the jury at his first trial acquitted him of the charge of sexual battery, the Double Jeopardy Clause barred his conviction in the second trial for gross sexual imposition. I find this argument to be unpersuasive.

{¶69} At his first trial, the jury acquitted Buzanowski of violating R.C. 2907.03(A)(2), i.e., engaging in sexual *conduct* with the victim *knowing* that her ability to appraise the nature of her conduct was substantially impaired. In his second trial, the

jury found him guilty of violating R.C. 2907.05(A)(5), engaging in sexual *contact* with the victim when he knew *or* had *reasonable cause to believe* that her judgment was substantially impaired.

{¶70} In the first trial, the jury could have determined that the state failed to prove Buzanowski "knew" the victim was substantially impaired when he engaged in sexual conduct with her. In the second trial, the jury could have concluded from the evidence presented that Buzanowski had "reasonable cause to believe" that the victim was substantially impaired when he engaged in sexual contact with her. Because these two offenses do not involve identical "ultimate factual issues," they do not implicate Buzanowski's double jeopardy rights. Therefore, I believe the majority opinion's reliance on *State v. Edwards*, 8th Dist. Cuyahoga Nos. 94568 and 94929, 2011-Ohio-95, as authority for its position is misplaced. Consequently, I would overrule Buzanowski's third assignment of error.

{¶71} This brings me, finally, to the issue of whether the jury "lost its way" in finding Buzanowski guilty of gross sexual imposition and of unlawful sexual conduct with a minor. I do not think so.

{¶72} The majority opinion believes that H.K.'s version of the incident was untrustworthy. However, the focus should be on whether the jury could find from all of the evidence that Buzanowski had reasonable cause to believe that H.K.'s ability to consent to sexual contact was substantially impaired and that Buzanowski was reckless with respect to H.K.'s age when he engaged in sexual conduct with her.

**{¶73}** Nearly all of the state's witnesses described H.K. as being, not just uninhibited, but "drunk," after imbibing the liquor. M.B., Banic, Milos, and A.K. all testified that there was some discussion about M.B.'s girlfriends' ages before Buzanowski began pouring the vodka shots. Each indicated that H.K's response was that they were "old enough." Milos stated this response was inadequate for him. All of this testimony suggested that Buzanowski had suspicions about the issue but chose to overlook the matter.

**{¶74}** A review of H.K.'s testimony indicates she may well have embellished her version of the incident on direct examination, but she underwent rigorous and lengthy cross-examination. During her testimony, H.K. explained her reasons for providing additional details of the incident as time went on. Some of those details were corroborated by the other witnesses.

**{¶75}** In my view, the jury was in the best position to weigh the testimony of all of these witnesses, and this court should not substitute a contrary judgment. I conclude that Buzanowski's fifth assignment of error lacks merit.

**{¶76}** Based upon the foregoing, although I believe Buzanowski's conviction for contributing to the unruliness or delinquency of a child should be reversed, and that matter remanded for further proceedings, I would affirm his other convictions.

KEY TERMS:

Sufficiency, manifest weight, instructed on all elements, recklessness, contributing to the unruliness or delinquency of a child, manifest miscarriage of justice, gross sexual

imposition, SANE nurse narrative, hearsay, harmless error, unlawful sexual conduct with minor. Appellant's conviction for contributing to the unruliness or delinquency of a child constituted a manifest miscarriage of justice where the trial court failed to instruct the jury on the appropriate mental state for the offense, recklessness, and the appellant's mental state at the time of the offense was heavily disputed at trial. State presented sufficient evidence to support appellant's conviction for gross sexual imposition. However, state was barred by collateral estoppel from retrying appellant on the gross sexual imposition charge. Trial court erred in allowing the SANE nurse's narrative into evidence as it constituted impermissible hearsay, however it was harmless error. The court was split on whether appellant's conviction for unlawful sexual conduct with a minor was against the manifest weight of the evidence.