[Cite as *State v. Sullivan*, 2025-Ohio-643.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                   :

    Plaintiff-Appellee,                      :

                                    No. 113834

    v.                                                     :

KHAYREE SULLIVAN,                         :

    Defendant-Appellant.                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** February 27, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-685204-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mallory Buelow and Chauncey Keller, Assistant Prosecuting Attorneys, *for appellee.*

Friedman, Gilbert & Gerhardstein, Marcus Sidoti, and Alex Ugolini, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} After three days of deliberation, the jury found defendant-appellant, Khayree Sullivan, not guilty of three counts of the indictment filed under Cuyahoga C.P. No. CR-23-685204-A and could not reach a verdict as to the remaining five

counts.  Sullivan moved to dismiss those remaining counts on the grounds that any further proceeding would violate the double-jeopardy protections guaranteed to him by the United States and Ohio Constitutions.  The trial court denied his motion and this appeal followed.  For the reasons that follow, this court affirms the trial court's judgment.

## I.    Procedural History

{¶ 2}    In October 2023, the State named Sullivan, and his codefendant Kameren White ("White"), in an eight-count indictment, charging them both with offenses that occurred on September 21, 2023, when Sullivan and White allegedly shot at E.S., G.L., and K.L., a six-month-old child, resulting in injury to both E.S. and K.L.  The indictment charged:

Count 1:  discharge of a firearm on or near prohibited premises, with a serious physical harm finding, in violation of R.C. 2923.162(A)(3), identifying E.S. as the victim;

Count 2:  felonious assault, in violation of R.C. 2903.11(A)(1), identifying E.S. as the victim;

Count 3:  discharge of a firearm on or near prohibited premises, with a serious physical harm finding, in violation of R.C. 2923.162(A)(3), identifying K.L. as the victim;

Count 4:  felonious assault, in violation of R.C. 2903.11(A)(1), identifying K.L. as the victim;

Count 5:  felonious assault, in violation of R.C. 2903.11(A)(2), identifying E.S. as the victim;

Count 6:  felonious assault, in violation of R.C. 2903.11(A)(2), identifying K.L. as the victim;

Count 7:  felonious assault, in violation of R.C. 2903.11(A)(2), identifying G.L. as the victim; and

Count 8: discharge of a firearm on or near prohibited premises, with a substantial risk of physical harm to any person or to property finding, in violation of R.C. 2923.162(A)(3).

Each charge carried both one- and three-year firearm specifications.

{¶ 3} The case proceeded to a joint trial, where the jury considered testimony from 16 witnesses and reviewed over 150 exhibits.[1] Relevant to the appeal, the State presented at trial that on September 21, 2023, White and Marvin Bell ("Bell") were riding in a vehicle driven by Sullivan, when they drove past E.S., who was pushing his six-month-old daughter in a stroller. G.L., the child's mother, was walking further ahead of them. Sullivan did a U-turn in the street and stopped the vehicle alongside E.S., and a verbal altercation ensued. According to Bell, E.S. started to pull a firearm from his cross-body bag, causing White to question E.S., "[Y]ou pulling?" E.S. testified that he was not reaching for a gun but putting his Airpods and phone into his bag because he believed he was about to fight White; conflicting testimony was presented whether E.S. told the men that he did not have a gun. Nevertheless, Sullivan reached into his vehicle, grabbed his firearm, and shot toward E.S. According to Bell, White also discharged his firearm toward E.S., but believed that the men were aiming for the ground. In response, E.S. ran, pushing the stroller down the street, and retreating into a driveway. According to E.S., he was shot as he neared the driveway, but he did not see who shot him. G.L. had

---

[1] The trial exhibits are not part of the App.R. 9(B) record. Pursuant to Cuyahoga C.P., Gen.Div., Loc.R. 29(F), the parties retained their own exhibits. Neither Sullivan nor the State requested to supplement the record with their retained trial exhibits.

already fled when she heard the gunfire, also running up a driveway. When she saw E.S., G.L. grabbed the stroller, removed her child, and observed that the child had been shot.

{¶ 4} Sullivan and White advanced at trial that they acted in self-defense when they discharged their firearms because they believed that E.S. reached for or pulled a firearm from his bag affixed around his body. They supported their defense with testimony and evidence that as they fled the scene and drove past E.S. who was standing in the driveway, additional sounds of gunfire were recorded by a Ring Doorbell camera. The defense argued that those gunshots were from the firearm that E.S. possessed and any injury sustained by E.S. or K.L. could have been from those additional gunshots. The jury received an instruction on use of deadly force in self-defense. (Tr. 1266.)

{¶ 5} After two days of deliberations, the jury notified the trial court that they were deadlocked on some counts, but reached a verdict as to others. (Tr. 1376.) After receiving a *Howard* charge, the jury deliberated for another day to no avail — they were "hopelessly deadlocked" on certain counts. (Tr. 1380.)

{¶ 6} On March 8, 2024, the jury returned not guilty verdicts on Counts 1, 2, and 7 for both Sullivan and White. The jury did not reach a verdict on Counts 3, 4, 5, 6, and 8, and, thus the court declared a mistrial on those counts. The State notified the trial court that it intended to retry Sullivan and White on those counts, causing the trial court to schedule a trial date.

{¶ 7} On March 25, 2024, Sullivan moved to dismiss the remaining charges against him, contending that proceeding to a second trial would violate the double-jeopardy protections guaranteed to him by the United States and Ohio Constitutions. The State opposed.

{¶ 8} The trial court denied Sullivan's motion, and this appeal followed.[2]

## II. The Appeal

{¶ 9} In his sole assignment of error, Sullivan contends that as a result of the jury verdict, the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution bar the State from retrying him on any of the remaining charges contained in the indictment.

### A. Standard of Review

{¶ 10} The denial of a motion to dismiss on double-jeopardy grounds is a final appealable order subject to immediate de novo appellate review. *State v. Anderson*, 2014-Ohio-542, ¶ 26; *State v. Morris*, 2012-Ohio-2407, ¶ 16.

### B. Double Jeopardy and Collateral Estoppel

{¶ 11} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution protect a defendant from being put in jeopardy twice for the same offense. *In re A.G.*, 2016-Ohio-3306, ¶ 8. "'The protections afforded by the double-jeopardy clauses of the

---

[2] White joined in Sullivan's motion to dismiss, which the trial court also denied. White has filed his own appeal under *State v. White*, 8th Dist. Cuyahoga No. 113897.

Ohio and U.S. Constitutions are 'coextensive.'" *State v. Fisher*, 2024-Ohio-4484 ¶ 204 (8th Dist.) quoting *State v. Mutter*, 2017-Ohio-2928, ¶ 15.

{¶ 12} The Double Jeopardy Clause bars not only multiple punishments for the same offense but also affords protection against successive prosecutions for the same offense after acquittal or conviction. *State v. Buzanowski*, 2014-Ohio-1947, ¶ 32 (8th Dist.), citing *State v. Edwards*, 2011-Ohio-95, ¶ 17 (8th Dist.), citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The Double Jeopardy Clause does not present an absolute bar to retrial, and it does not prevent the state from re-prosecuting a defendant after a declared mistrial based on the jury's failure to reach a verdict. *Anderson*, 2016-Ohio-5791, ¶ 32 ("The state is entitled to retry a defendant when a trial court has declared a mistrial after the jury failed to reach a verdict."); *see also Richardson v. United States*, 468 U.S. 317, 326 (1984) ("[W]e reaffirm the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected."). The Supreme Court has explained that a conviction or acquittal creates a "final result, which in turn triggers the protections of the Double Jeopardy Clause," but that "[w]here there is no finality, there can be no double jeopardy violation." *Anderson* ¶ 42, citing *United States v. Perez*, 22 U.S. 579 (1824).

{¶ 13} Although the Double Jeopardy Clause does not ordinarily bar a retrial following a hung jury, it does incorporate the doctrine of collateral estoppel. *Richardson* at 324; *State v. Lovejoy*, 79 Ohio St.3d 440, 443-444 (1997); *State v. Liberatore*, 4 Ohio St.3d 13, 14 (1983), citing *Ashe v. Swenson*, 397 U.S. 436, 443

(1970). "Collateral estoppel generally refers to the acquittal prong of double jeopardy." *Lovejoy* at 444.

{¶ 14} "Collateral estoppel is the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings. Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Lovejoy*, 79 Ohio St.3d at 443, quoting *Ashe* at 443. *See also Dowling v. United States*, 493 U.S. 342, 348 (1990); *Brown* at 166, fn.6 ("[S]uccessive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first."). However, "'mere overlap in proof between two prosecutions does not establish a double jeopardy violation.'" *State v. Ferricci*, 2019-Ohio-994, ¶ 13 (8th Dist.), quoting *United States v. Felix*, 503 U.S. 378, 386 (1992).

{¶ 15} Whether retrial is barred under the doctrine of collateral estoppel, a reviewing court "'examine[s] the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude[s] whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Ashe* at 444, quoting Mayers & Yarborough, *Bis Vexari: New Trials and Successive Prosecutions*, 74 Harvard L.Rev. 1, 38-39 (1960); *see also Yeager v. United States*, 557 U.S. 110, 119-120

(2009). "It is the defendant's burden to demonstrate the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling* at 350.

**C. Analysis**

{¶ 16} Sullivan contends that by virtue of the acquittals on Counts 1, 2, and 7, the jury determined issues of ultimate fact implicated in the remaining counts, and, thus relitigating those factual issues violates his protections against double jeopardy. He generally posits that either (1) "the jury was convinced of [his] self-defense claims, in which case this should have been applied to all counts," or (2) because the jury determined this his conduct did not result in serious physical harm to E.S. or physical harm/risk of harm to G.L., "the jury's determination and logic must mean" that "they did not believe that [his] conduct resulted in serious physical harm, physical harm, or risk of physical harm" to any named victim because the victims were all in the same vicinity when Sullivan discharged his firearm.

{¶ 17} The State contends that "the jury made no finding that [Sullivan] acted in self-defense." The record before this court neither supports nor refutes this statement because the jury did not complete any specific verdict form that would allow it to make such determination in rendering its verdict. Quite simply, this court does not know the basis from which the jury found Sullivan not guilty of Counts 1, 2, and 7 because the court instructed the jury to consider each count, including whether Sullivan acted in self-defense, independently and separately.

{¶ 18} By virtue of the not guilty verdicts on Counts 1, 2, and 7, the jury, therefore, could have concluded that either (1) the State did not prove the elements

of those offenses beyond a reasonable doubt; or (2) the State proved the elements, but did not disprove beyond a reasonable doubt any one of the self-defense prongs as applied to a certain offense.

**1. Did the jury's acquittal of Counts 1, 2, and 7 determine the issue of ultimate fact that Sullivan acted in self-defense?**

{¶ 19} Sullivan first contends that double jeopardy bars successive prosecution because the jury's acquittal in Counts 1, 2, and 7 determined an issue of ultimate fact that he acted in self-defense and thus "should have been applied to all counts." We disagree.

{¶ 20} By asserting self-defense, Sullivan admitted that he discharged his firearm. *See State v. Webb*, 2025-Ohio-456, ¶ 26 (8th Dist.) (claim of self-defense is an admission of the elements of an offense, but justified in its commission). Accordingly, Sullivan's conduct was not in dispute before the jury.

{¶ 21} The trial court instructed the jury on use of deadly force in self-defense. As requested by the defense, the trial court instructed the jury that deadly force self-defense applied to all counts. *See* tr. 1202-1204; 1225-1230 (trial court's discussion with counsel on whether self-defense applies to all counts), tr. 1225-1230 (trial court, over objection, grants Sullivan's request to include self-defense for all counts), and tr. 1266-1269 (court's instruction to the jury on self-defense on all counts).

{¶ 22} The jury received the following deadly force self-defense instruction:

The State of Ohio must prove beyond a reasonable doubt that Mr. Sullivan and/or Mr. White when using deadly force did not act in self-defense. To prove that Mr. Sullivan and/or Mr. White when using

deadly force did not act in self-defense, the State must prove beyond a reasonable double at least one of the following:

(A) Mr. Sullivan and/or Mr. White was at fault in creating the situation giving rise to the shooting that took place on September 21st of 2023 in Garfield Heights, Ohio.

(B) that Mr. Sullivan and/or Mr. White did not have reasonable grounds to believe that either was in immediate or imminent danger of death or great bodily harm;

(C) or Mr. Sullivan and/or Mr. White did not have an honest belief even if mistaken that Mr. Sullivan and/or Mr. White was in immediate or immanent [sic] danger of death or great bodily harm;

(D) or the defendant used unreasonable force.

Deadly force means any force that carries with it a substantial risk that will proximately result in the death of a person.

A defendant does not act in self-defense if the State proves beyond a reasonable doubt that the defendant was at fault in creating the situation that resulted in the injury.

A defendant is at fault if the defendant was the initial aggressor, and (A), [E.S.] did not escalate the situation to deadly force; or (B), a defendant provoked [E.S.] into using deadly force, or (C), Mr. Sullivan and/or Mr. White did not withdraw from the situation.

In deciding whether a defendant had reasonable grounds to believe and an honest belief that the defendant was in immediate or imminent danger of death or great bodily harm, you must put yourself in the position of the accused with their characteristics and knowledge or lack of knowledge and under the circumstances and conditions that surrounded the accused at the time.

You are to consider the conduct of [E.S.] and decide whether his acts and words caused the accused to reasonably and honestly believe that the accused was about to be killed or receive great bodily harm.

Substantial risk has been previously defined and the same definition applies.

Words alone do not justify the use of force. Resort to deadly force is not justified by abusive language, verbal threats, or other words no matter how provocative.

A person is allowed to use force that is reasonably necessary under the circumstances to protect oneself from an apparent danger.

For you to find an accused guilty, the State must prove beyond a reasonable doubt that the defendant used more force than reasonably necessary and that the force used was greatly disproportionate to the apparent danger.

In deciding whether the force used was greatly disproportionate to the apparent danger, you may consider whether the force used shows revenge or a criminal purpose.

If you find that the State proved beyond a reasonable doubt all of the elements of any charge, and that the State proved beyond a reasonable doubt that an accused did not act in self-defense, you must find the defendant guilty according to those findings.

If you find that the State failed to prove beyond a reasonable doubt any of the elements of any charge, or if you find that the State failed to prove beyond a reasonable doubt that Mr. Sullivan and/or Mr. White did not act in self-defense, you must find Mr. Sullivan and/or Mr. White not guilty according to your findings.

(Tr. 1266-1269.)

{¶ 23} The court specifically instructed the jury that "[e]ach charge set forth in the indictment constitutes a separate and distinct matter. You must consider each count and the evidence applicable to each count separately. And you are to state your findings as to each count uninfluenced by your verdict as to the other counts. A defendant may be found guilty or not guilty of any one or more of the offenses charged." (Tr. 1272-1273.) *See also* tr. 1370, reminding the jury, "[a]nd again you will consider each count separately."

{¶ 24} Early in their deliberation, the jurors asked for clarification on self defense and its application.[3] The question asked:

Is self-defense of a person against danger of death or great bodily harm (RC 2901.05) applied on all of the Counts 1 through 8 or do we make and apply this separately on each count (example: applies to Count 1, but not Count 2).

The trial judge provided a written response:

Self-defense of a person against danger of death or great bodily harm may be applied in Count 1 and/or 2 and/or 3 and/or 4 and/or 5 and/or 6 and/or 7 and/or 8. Each count must be decided separately.

{¶ 25} On day three of deliberations, after receiving the *Howard* charge the prior day, the jurors sent another question:

Can we have a copy of R.C. 2901.05?

Regarding self-defense (on page 45) can we have a clearer explanation of "creating the situation" . . . does it mean initial contact?. . . does it mean specific incident leading to the need for self-defense[?]

The trial judge responded: "Please refer to P. 45 of your charge . . . Please refer to the jury charge."

{¶ 26} Based on the foregoing, we find that whether Sullivan acted in self-defense was not an issue of ultimate fact decided by the jury's not guilty verdicts. Because the jury was instructed and advised that self-defense "may be applied in" one and/or all of the counts, and that each count should be considered separately, the jury may have unanimously agreed that the State failed to prove that Sullivan

---

[3] Except for the two jury notifications regarding being deadlocked, the jury questions were not memorialized in the official transcript. The jury questions however, were provided to this court in an envelope of "Exhibits" as part of the App.R. 9(B) record.

did not act in self-defense for certain offenses but could not unanimously agree whether the State disproved that Sullivan acted in self-defense on the other counts. This result is consistent with the court's pointed answer to the jury's question regarding the application of self-defense that "each count must be decided separately." Based on the jury instructions and subsequent jury questions, the jury considered use of deadly force self-defense separately and independently, applying the affirmative defense to each count. If the jury found Sullivan not guilty of Counts 1, 2, or 7 because the State did not disprove beyond a reasonable doubt that Sullivan acted in self-defense on those counts, those verdicts did not decide an issue of ultimate fact as to whether Sullivan acted in self-defense on the remaining counts.

{¶ 27} Accordingly, it is possible that the jury believed that Sullivan acted in self-defense when he initially discharged his firearm at E.S. But it is also possible that the jury could not unanimously agree on whether Sullivan's continued conduct of shooting his firearm as E.S. retreated constituted self-defense, especially when that conduct may have caused harm to an innocent bystander. It is significant to note that the trial court did not provide the jury with an instruction on transferred intent or transferred intent self-defense.[4]

---

[4] The doctrine of transferred intent is generally applied to culpability. It provides that "where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended and did harm the same person." *State v. Jones*, 2002-Ohio-6045, ¶ 79 (8th Dist.). Some courts have recognized and applied the doctrine of transferred intent to self-defense claims. *See State v. Clifton*, 32 Ohio App.2d 284 (1st Dist. 1972.).

{¶ 28} Having found that the jury's acquittal of Counts 1, 2, and 7 did not determine the ultimate factual issue of self-defense, we now turn to Sullivan's alternative argument that the jury's acquittal determined ultimate factual issues regarding harm, thus precluding a second trial on those issues.

**2. Did the jury's acquittal of Counts 1, 2, and 7 determine an issue of ultimate fact that Sullivan's actions did not cause any harm or attempted harm?**

{¶ 29} Count 1 charged Sullivan with discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3). The indictment read: "[Sullivan] did discharge a firearm upon or over a public road or highway and the violation caused serious physical harm to [E.S.]." Count 2 charged Sullivan with felonious assault, in violation of R.C. 2903.11(A)(1). The indictment provided: "[Sullivan] did knowingly cause serious physical harm to [E.S.]." Count 7 charged Sullivan with felonious assault, in violation of R.C. 2903.11(A)(2). The indictment provided: "[Sullivan] did knowingly cause or attempt to cause physical harm to [G.L.] by means of a deadly weapon." The trial court's charge to the jury on these counts mirrored the language contained in the indictment.

{¶ 30} In resolving these three counts in favor of Sullivan, the jury did not resolve factual issues that need to be relitigated to prove his guilt as to Counts 3, 4, 5, 6, and 8 because they are independent from and unrelated to the counts of acquittal.

### a. Count 5

{¶ 31} Count 5 charged Sullivan with felonious assault, in violation of R.C. 2903.11(A)(2). The indictment provided: "[Sullivan] did knowingly cause or attempt to cause physical harm to [E.S.] by means of a deadly weapon." According to Sullivan, the jury's acquittal on Count 2 — knowingly causing E.S. serious physical harm — determined the essential factual issues implicated in Count 5, and thus the State is prohibited from retrying him on this count. We disagree.

{¶ 32} The State presented evidence that both Sullivan and White pointed and discharged their firearms at E.S., causing E.S. to retreat down the street while still pushing K.L. in the stroller. E.S. testified that he was shot in the buttocks/hip area as he turned and ran up a driveway. He testified, however, that he did not know who shot him. The police recovered a total of 24 shell casings from the area where Bell testified that White and Sullivan were shooting from — 17 casings were fired from the same firearm and the remaining seven were fired from another weapon.

{¶ 33} It is possible to cause or attempt to cause physical harm to a person but not cause serious physical harm. *Compare* R.C. 2901.01(A)(3) (defining physical harm to persons) with R.C. 2901.01(A)(5) (defining serious physical harm). As the State rightfully notes, if the jury had found that Sullivan did not cause or attempt to cause physical harm to E.S., then relitigating the counts involving serious physical harm to E.S. would implicate a factual issue resolved by the jury — that E.S. suffered no physical harm.

{¶ 34} In this case, the jury's acquittal of Count 2 determined that either (1) the State did not prove that E.S. suffered *serious* physical harm, (2) the State did not prove that Sullivan caused *serious* physical harm to E.S., or (3) the State did not disprove that Sullivan acted in self-defense in causing E.S. *serious* physical harm. Based on the record before this court, a retrial on Count 5 would not require relitigating an issue of ultimate fact because the jury's acquittal on Count 2 only determined that the Sullivan is not guilty of knowingly causing E.S. *serious* physical harm.

### b. Counts 3, 4, and 6

{¶ 35} Counts 3, 4, and 6 all identify K.L. as the victim. Count 3 charged Sullivan with discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3). The indictment read: "[Sullivan] did discharge a firearm upon or over a public road or highway and the violation caused serious physical harm to [K.L.]."

{¶ 36} Count 4 charged Sullivan with felonious assault, in violation of R.C. 2903.11(A)(1). The indictment provided: "[Sullivan] did knowingly cause serious physical harm to [K.L.]."

{¶ 37} Count 6 charged Sullivan with felonious assault, in violation of R.C. 2903.11(A)(2). The indictment provided: "[Sullivan] did knowingly cause or attempt to cause physical harm to [K.L.] by means of a deadly weapon."

{¶ 38} Sullivan contends that because he was acquitted of causing serious physical harm to E.S. and acquitted of causing or attempting to cause G.L. physical

harm, the jury decided the issue of ultimate fact that he did not cause or attempt to cause harm, serious or otherwise, to K.L., because he was in the vicinity of both E.S. and G.L. We disagree.

{¶ 39} E.S. and G.L.'s proximity to K.L. is not an ultimate issue of fact. The evidence demonstrated that G.L. was not in the same area as E.S. and K.L. when Sullivan and White started shooting. She testified that she was walking ahead of E.S. and K.L., and ran when the gunfire started. Additionally, Bell testified that Sullivan and White were shooting at E.S., albeit allegedly toward the ground. Finally, the evidence demonstrated that Sullivan and White knowingly continued to discharge their firearms at E.S., who was retreating while pushing K.L. in her stroller. Whether this continued conduct created an additional risk of harm was not resolved by virtue of the not guilty verdicts in Counts 1, 2, and 7. Accordingly, retrying Sullivan on Counts 3, 4, and 6 would not relitigate factual issues already resolved by the jury's finding that Sullivan did not cause E.S. serious physical harm or that he caused or attempted to cause G.L. physical harm.

### c. Count 8

{¶ 40} Count 8 charged Sullivan with discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3). The indictment read: "[Sullivan] did discharge a firearm upon or over a public road or highway and created a substantial risk of physical harm to any person or cause serious physical harm to property."

**{¶ 41}** As previously discussed, the jury's determination that Sullivan was not guilty of causing E.S. serious physical harm and that they were not guilty of causing or attempting to cause G.L. physical harm, only resolved those factual issues regarding those specific victims. Accordingly, the jury's acquittal of Counts 1, 2, and 7 did not determine ultimate issues of fact regarding whether Sullivan's conduct "created a substantial risk of harm to any person" or "caused serious physical harm to property."

### III. Conclusion

**{¶ 42}** After reviewing the record before this court, including the indictment, testimony presented at trial, the jury charge, juror questions, and verdict, we find that the jury could have found Sullivan not guilty of Counts 1, 2, and 7 based on either the State's failure to prove the individual elements of those certain offenses, or because the State failed to prove that Sullivan did not act in self-defense on certain offenses. It is clear that the jury considered each count separately and independently based on the evidence presented and the instructions given. Accordingly, the jury's verdict did not decide issues of ultimate fact that would be relitigated at a successive prosecution on the remaining counts — Counts 3, 4, 5, 6, and 8. We therefore find that the trial court did not err in denying Sullivan's motion to dismiss based on double-jeopardy protections. The assignment of error is overruled.

**{¶ 43}** Judgment affirmed and remanded.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN A. GALLAGHER, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR